UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JANICE POMEROY, as the personal representative of the estate of Jane Cristiano, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 17-cv-10211-DJC |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) ) ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                               February 27, 2018

## I. Introduction

Plaintiff Janice Pomeroy ("Pomeroy"), as the personal representative of the estate of Jane Cristiano ("Cristiano"), has filed this lawsuit against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) *et seq.*, for the wrongful death of Cristiano resulting from medical negligence by United States employees. D. 1 at 1. The United States now moves to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). D. 9. For the reasons stated below, the Court DENIES the government's motion.

## II. Standard of Review

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "[a]t the pleading stage," dismissal "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). As with a Fed. R. Civ. P. 12(b)(6) motion, the Court "must credit the plaintiff's

1

well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). Unlike a Rule 12(b)(6) motion, however, the Court may look beyond the pleadings to determine jurisdiction without converting the motion into a summary judgment motion. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

The United States is immune from suit without its consent, but the "FTCA is one instance of such consent; it waives the sovereign immunity of the United States with respect to certain torts committed by federal employees acting within the scope of their employment" and "gives federal courts jurisdiction over such claims." Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).

## III. Factual Background

East Boston Neighborhood Health Center ("EBNHC") is a federally supported community health center under the Public Health Service Act, 42 U.S.C. § 233(g), and it owns and operates Winthrop Place,[1] a nursing home. D. 1 ¶ 2. Cristiano was transferred to Winthrop Place in October 2013 after developing difficulty swallowing such that her prior home concluded that they could no longer provide her with sufficient care. D. 1 ¶¶ 6-7. After a two-week probationary period, Winthrop Place determined it could provide adequate care for Cristiano. D. 1 ¶ 9. At the time, Cristiano "had dementia, used a walker to ambulate and was unable to eat solid food because of her difficulty swallowing." D. 1 ¶ 8.

Cristiano became a full-time resident of Winthrop Place, and under her Resident Agreement, she "was entitled to various services, including, but not limited to, 24-hour staffing by

---

[1] The government refers to the home as Winthrop PACE in its reply brief, see D. 26 at 1, but the Court follows the Plaintiff's labeling for the purposes of this motion.

2

licensed nurses and certified health aides, and all meals." D. 1 ¶ 9. On February 9, 2014, however, a "new aide gave Ms. Cristiano a chicken sandwich, instead of her usual puree meal," and Cristiano began choking. D. 1 ¶ 10. This aide was Jose Andrade, an employee of Dependable Healthcare Services, which contracted with EBNHC to provide health staffing services. D. 10 at 3, 7; D. 11 ¶¶ 2-6. A nurse administered the Heimlich maneuver, but Cristiano "remained in acute distress." D. 1 ¶ 10. Cristiano died in route to the hospital and the medical examiner deemed the cause of death "asphyxia due to aspiration of food bolus." D. 1 ¶ 11. Following Cristiano's death, a nurse at Winthrop Place told Pomeroy that they "take full responsibility" and "fired the employee." D. 1 ¶ 12.

## IV. Procedural History

Plaintiffs instituted this action on February 7, 2017. D. 1. The United States has now moved to dismiss. D. 9. The Court heard the parties on the pending motion and took the matter under advisement. D. 23.

## V. Discussion

The government argues that this Court does not have subject matter jurisdiction because the case is barred by sovereign immunity. D. 9 at 1. The Federally Supported Health Centers Assistance Act ("FSHCAA") establishes a sovereign immunity waiver, setting suits against the United States under the FTCA as the exclusive remedy "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." 42 U.S.C. § 233(a) ("Section 233(a)"). The government does not dispute that EBNHC and Winthrop Place fall within the purview of the FSHCAA. See D. 10 at 5. The government argues, however, that Section 233(a) does not apply here because first, Pomeroy's negligence and negligent supervision

3

claims do not involve "the performance of medical, surgical, dental, or related functions," and second, the aide in question was an independent contractor. D. 10 at 5-8. The Court addresses each argument in turn.

> **A. Winthrop Place's Negligent Execution of Cristiano's Treatment Plan Qualifies as "Related Functions" Under the FSHCAA**

Whether the Court has subject matter jurisdiction over Pomeroy's claims depends upon whether the conduct in question falls within the scope of the FSHCAA. Specifically, the Court must determine whether the nursing home's negligent provision of solid food to a woman with a known swallowing disability constitutes a "medical . . . or related function[]," 42 U.S.C. § 233(a).

The Court looks first to the text of Section 233(a). "If the statute addresses the question at issue and is clear in its meaning, then [the Court] 'must give effect to the unambiguously expressed intent of Congress.'" Pereira v. Sessions, 866 F.3d 1, 3 (1st Cir. 2017) (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)). The government provides dictionary definitions of the categories listed in Section 233(a), arguing that "[c]afeteria or food service does not fall under any of these categories." D. 10 at 6. This contention, however, seems to omit the "related functions" language from its textual analysis. See id. The statute must cover a broader scope of activity than the delineated categories alone, or else "related functions" would be mere superfluity. See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 66 (1st Cir. 2011) (noting that "a statute should 'be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)). It appears that the "related functions" language may reasonably said to be broad enough to include the conduct at issue here and certainly does not exclude it.

The government next argues that the purpose and history of the statute suggest that the FSHCAA was not intended to include negligent provision of food. D. 10 at 6. The government

4

explains that Congress enacted the FSHCAA to enable health centers in underserved and underfunded communities to attract qualified physicians by obtaining malpractice insurance through the FTCA. Id. (citing 138 Cong. Rec. S1782-01, 1992 WL 279542 (Oct. 8, 1992); 138 Cong. Rec. H11552-01, 1992 WL 280140 (Oct. 5, 1992)). This legislative purpose and history, however, which Pomeroy does not dispute, does not foreclose an interpretation of Section 233(a) that includes the circumstances of this case. A wrongful death action arising from the negligent treatment of a patient—within the walls of the treatment facility and in direct contravention of the patient's treatment plan—hardly appears incongruous with this stated purpose.

The government points to Mendez v. Belton, 739 F.2d 15 (1st Cir. 1984), for the proposition that, at least in the First Circuit, Section 233(a) is limited to claims that sound in medical malpractice. D. 10 at 5-6. In Mendez, the First Circuit held that the FSHCAA did not establish immunity for an individual doctor who allegedly engaged in acts of race and sex discrimination in the peer review process, explaining that the statute instead protects "employees from suits that sound in medical malpractice." Mendez, 739 F.2d at 19-20. The government argues that negligent food services is not medical malpractice, foreclosing the government's liability here. D. 10 at 5-6.

First, the Court is not convinced that the First Circuit intended its language to have the sweeping effect that the government proposes. In Mendez, the First Circuit addressed a claim arising out of an employment relationship, which is a far cry from the categories in Section 233(a) and the activity with which Congress was concerned when enacting the FSHCAA. See Mendez, 739 F.2d at 19.[2] For one example, the Second Circuit has construed Mendez's holding narrowly

---

[2] Indeed, where courts have followed Mendez and dismissed claims brought under the FTCA, the claims arose out of the employment relationship rather than a physician-patient relationship. See, e.g., Gallagher v. Penobscot Cmty. Healthcare, No. 1:15-cv-244-DBH, 2016 U.S. Dist. LEXIS

5

on this basis, explaining that the First Circuit's focus was not on interpreting Section 233(a) because the conduct there "had nothing to do with the 'performance of medical . . . or related functions.'" Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000) (quoting 42 U.S.C. § 233(a)) (holding that physicians' refusal to authorize estrogen treatments for a preoperative transgender prisoner fell within Section 233(a)'s scope). Other courts have also adopted a broader understanding of Section 233(a).³ See, e.g., Houck v. Bagwell, No. 17-cv-474-JPG-SCW, 2017 U.S. Dist. LEXIS 200891, at *3-4 (S.D. Ill. Nov. 9, 2017) (holding that providing ineffective pain medication and taking away plaintiff's cane that he had been prescribed fell within Section 233(a)); Robinson v. Knibbs, No. 16-cv-3826 (NSR), 2017 U.S. Dist. LEXIS 131629, at *7-9 (S.D.N.Y. Aug. 17, 2017) (holding same for a claim against a physician's assistant for turning plaintiff away from sick call rather than treating); De La Cruz v. Graber, No. 16-cv-1294-VBF, 2017 U.S. Dist. LEXIS 156805, at *7 (C.D. Cal. June 15, 2017) (holding that the defendant was entitled to immunity under Section 233(a) from plaintiff's claims that he was harmed "by the manner in which [defendant] performed her duties as Medical Administrator"); Berryman v. Mullen, No. 1:16-cv-47, 2017 U.S. Dist. LEXIS 141247, at *42 (N.D. W. Va. May 15, 2017) (holding that the physician's assistant was entitled to absolute immunity "for all claims arising from the medical care he provided to Plaintiff"). The claims here "aris[e] from the medical care" Winthrop Place provided Cristiano, see Berryman, 2017 U.S. Dist. LEXIS 141247, at *42, and allege that nursing staff failed to follow its plan of care for Cristiano, see Houck, 2017 U.S. Dist. LEXIS 200891, at

---

33465, at *13-14 (D. Me. Mar. 15, 2016) (holding that a physician plaintiff's wrongful termination claim did not fall within Section 233(a)).

³ Many of these courts address Section 233(a)'s breadth to determine the viability of claims against federal officers or employees, pursuant to Bivens v. Six Unknown Named Agents, 456 F.2d 1339 (1972), because Section 233(a) dictates that the FTCA is the "exclusive remedy" for claims falling within its ambit, 42 U.S.C. § 233(a). In these cases, therefore, a broad interpretation of Section 233 generally leads to dismissal for want of subject matter jurisdiction.

*4, falling within the range of conduct courts have deemed covered by Section 233(a). At minimum, the Court is unconvinced that Mendez limits viable FSHCAA claims in this Circuit to medical malpractice claims alone.

Second, even if the Court accepts this narrower interpretation of Section 233(a), Pomeroy has sufficiently shown that the circumstances of this case sound in medical malpractice. See D. 15 at 7-8. The Court looks to Massachusetts law to define medical malpractice and, thus, the activity to which the United States has waived sovereign immunity.[4] See 28 U.S.C. § 1346(b)(1) (explaining that FTCA liability is determined "in accordance with the law of the place where the act or omission occurred"). Massachusetts defines medical malpractice "broadly to encompass 'all treatment-related claims.'" Vasa v. Compass Med., P.C., 456 Mass. 175, 177 (2010) (quoting Little v. Rosenthal, 376 Mass. 573, 576 (1978)). Massachusetts law's definition of medical malpractice claims is consistent with FSHCAA law. As with the federal statute, the Massachusetts medical malpractice statute does not limit malpractice claims to those against physicians. See Mass. Gen. Laws c. 231, §60B. Moreover, Massachusetts's "treatment-related claims" language also appears consistent with Section 233's language and jurisprudence. In Mendez, the First Circuit explained that cases in which defendant physicians had successfully invoked FSHCAA to provide them with immunity were those involving "damages caused by improper medical treatment," and cited, among other cases, Flickinger v. United States, in which the court explained that the plaintiff's exclusive remedy for alleged negligence by a nurse practitioner misreading

---

[4] The government, in its reply brief, relies upon cases in which state courts in New York, Tennessee, Georgia and Kansas "characterized allegations like Plaintiff's as sounding in ordinary negligence." D. 26 at 2. Even if these cases did stand for the proposition the government alleges, which Pomeroy disputes, D. 27 at 2, these cases are obviously not binding on the Court's interpretation of medical malpractice under Massachusetts law.

7

medical symptoms was under the FTCA and Section 233(a), Flickinger, 523 F. Supp. 1372, 1373-74 (W.D. Pa. 1981). Mendez, 739 F.2d at 20.

Negligent supervision of and provision of food to Cristiano, as alleged here, sounds in medical malpractice, as Massachusetts courts have defined it. For one example, a Massachusetts Appeals Court held that a nursing home was liable for medical malpractice when a nurse's aide negligently allowed a patient to fall to the floor while transferring her from the toilet to a wheelchair. Pitts v. Wingate at Brighton, Inc., 82 Mass. App. Ct. 285, 287-90 (2012). The court pointed out that upon intake, the nursing home noted that the patient presented a "potential for falls," and her care plan thus directly addressed that need, and that the nurse who transferred the plaintiff to her wheelchair "deviated from the applicable standard of care" in multiple respects. Id. at 287. Likewise, here, Pomeroy has alleged that Winthrop Place was alerted to Cristiano's heightened risk with the intake of solid foods, established an explicit care plan to ensure Cristiano's safety by providing 24-hour supervision and pureed foods and deviated from that standard of care by failing to supervise and aid Cristiano adequately during mealtime.[5] Such allegations sound in medical malpractice in Massachusetts and arise from "performance of medical . . . or related functions" to which the United States has consented to suit in Section 233(a).

### B. Andrade's Employment Status Does Not Defeat Subject Matter Jurisdiction

The government also argues that it cannot be held liable because the aide, Andrade, was an independent contractor employed by Dependable Healthcare Services and not EBNHC. D. 10 at

---

[5] The government argues that Pitts is distinct because it did not involve "a claim of negligent supervision, which is the theory relied on by Plaintiff to pin liability on the United States." D. 26 at 2 n.2. As Pomeroy points out, however, "her [c]omplaint is not so limited." D. 26 at 1. Rather, the complaint also includes claims that Winthrop Place staff negligently performed their own duties, in "fail[ing] to develop and follow an appropriate care plan for Ms. Cristiano." D. 27 at 1-2; see D. 1 ¶ 14.

8

3, 7; D. 11 ¶¶ 2-6. The government has only consented to suit under the FTCA for torts committed by federal officers within the scope of their employment. 28 U.S.C. § 1346(b)(1). "The FTCA expressly does not waive the government's immunity for claims arising from the acts or omissions of independent contractors." Carroll, 661 F.3d at 93 (emphasis in original). Under the FSHCAA, the government's liability extends to entities receiving funding under the Public Health Service Act, including "any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner." 42 U.S.C. § 233(g)(1).

Pomeroy argues that Andrade's classification as an independent contractor remains in question, due to the amount of control exerted over the aide by EBNHC. D. 15 at 11-12. "The key factor governing whether an entity providing services to the United States is an independent contractor is whether the contractor, rather than the government, exercises day-to-day supervision and control of its own activities." Carroll, 661 F.3d at 95. Pomeroy argues that the terms of the contract between EBNHC and Dependable Healthcare Services and the statements made by Winthrop Place employees to Pomeroy following Cristiano's death illustrate EBNHC's control and hiring and firing authority over Andrade. D. 15 at 11-12; see D. 11-1 at 3-4. The government disputes Pomeroy's interpretation of the contract, but at oral argument and in its reply briefing, the government conceded that the question of EBNHC's control over Andrade "is an issue that is best left for summary judgment." D. 26 at 4-5. The Court will, therefore, refrain from resolving this question on a now undeveloped record.

Regardless, the Court reiterates that Pomeroy's complaint alleges negligence not only by Andrade, but also by Winthrop Place nursing staff who negligently performed their own duties here. See D. 1 ¶¶ 13-14. Pomeroy argues that nursing staff "had a duty to monitor and assist Ms.

9

Cristiano at all meals in accordance with a comprehensive care plan developed to address her medical conditions" that they did not follow here. D. 15 at 13; D. 1 ¶ 9. The government does not dispute that nursing staff of Winthrop Place qualify as federal employees under FSHCAA, or that Cristiano's resident treatment plan included a 24-hour and meal supervision obligation. The government interprets Pomeroy's "negligent supervision" claim as only encompassing Winthrop employees' negligent supervision of Andrade, D. 10 at 7; D. 26 at 4-5, but Pomeroy has alleged negligence by the medical and nursing staff for failing to supervise Cristiano during mealtime, D. 1 ¶ 14.

## VI. Conclusion

For all of the foregoing reasons, the Court DENIES without prejudice Defendants' motion to dismiss, D. 9.

**So Ordered.**

/s/ Denise J. Casper<br>United States District Judge